**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| EMMETT J. MICHAELS, | Case No.: 10-cv-500 |
| Plaintiff, | **ORDER** |
| vs. | |
| PENTAIR WATER POOL AND SPA, INC., *et al.*, | |
| Defendants. | |

## I.   INTRODUCTION

Plaintiff Emmett Michaels ("Plaintiff") was injured by a pool filter explosion. He sued the alleged manufacturers Defendants Pentair Water Pool and Spa, Inc., Pentair, Inc.,[1] and Pentair Pool Products, Inc. (collectively, "Pentair") in state court. He also sued Defendant Pool Chlor of Nevada, Inc. ("Pool Chlor"), who provided Plaintiff with services for his pool. Pentair removed to this Court. Presently before the Court is Plaintiff's Plaintiff's Motion to Remand (#9). Pentair filed an opposition (#20) and Plaintiff replied (#22). Based on the following analysis, the Court will GRANT Plaintiff's Motion to Remand (#9).

## II.   BACKGROUND

Plaintiff Emmett Michaels ("Plaintiff") used a filter for his pool manufactured by Defendants Pentair Water Pool and Spa, Inc., Pentair, Inc.,[2] and Pentair Pool Products, Inc. (collectively, "Pentair"). Plaintiff had an agreement with Defendant Pool Chlor of Nevada, Inc. ("Pool Chlor") to provide chemical treatment for his pool. On July 1, 2008, the filter exploded and injured Plaintiff. On June 15, 2009, Plaintiff sued Pentair and Pool Chlor in state court.

---

[1] Pentair, Inc. was terminated as a defendant on April 8, 2010.
[2] Pentair, Inc. was terminated as a defendant on April 8, 2010.

Plaintiff asserted a claim for negligence against Pool Chlor and claims for negligence, breach of express and implied warranty, and strict product liability against Pentair. On April 8, 2010, Pentair removed the action to this Court. On May 6, 2010, Plaintiff moved to remand the case back to state court.

### III.   LEGAL STANDARD

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). District courts have subject matter jurisdiction over civil actions where no plaintiff is a citizen of the same state as a defendant and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). A civil action brought in state court may be removed by the defendants to a federal district court if the district courts have original jurisdiction over the matter. 28 U.S.C. § 1441(a).

Removal statutes are strictly construed against removal jurisdiction. *Ritchey v. UpJohn Drug Co.*, 139 F.3d 1313, 1317 (9th Cir. 1998); *Gaus v. Miles*, 980 F.2d 564, 566 (9th Cir. 1992). "'Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.'" *Id.* (quoting *Libhart v. Santa Monica Dairy Co.*, 592 F.2d 1062, 1064 (9th Cir. 1979)). The defendant always has the burden of establishing that removal is proper. *Gaus*, 980 F.2d at 566.

### IV.   DISCUSSION

Pentair has removed based on diversity of citizenship. Though Pool Chlor is a citizen of Nevada for diversity jurisdiction purposes, Pentair argues that Pool Chlor was fraudulently joined such that its citizenship should be disregarded.

"[F]raudulently joined defendants will not defeat removal on diversity grounds." *Ritchey*, 139 F.3d at 1318. There are two ways to establish fraudulent joinder: (1) the defendant may facially attack plaintiff's complaint by showing the inability of the plaintiff to establish a cause of action against the non-diverse defendant based on the plaintiff's allegations or (2) the

defendant may attempt to disprove jurisdictional facts alleged in the plaintiff's pleadings. *See Hunter v. Philip Morris USA*, 582 F.3d 1039, 1044 (9th Cir. 2009) (citing *Smallwood v. Illinois Central R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc)); *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 995 (D. Nev. 2005).

**A.     Facial attack**

Pentair argues that Plaintiff fails to state a claim for relief against Pool Chlor in his complaint because the duty to warn in Nevada extends only to manufacturers, distributors, sellers, and lessors of defective products. (Def.'s Opp'n (#20) 6:26–7:17).  Pentair's reasoning is flawed.  Just because strict product liability claims only extend to manufacturers, distributors, sellers, and lessors of defective products does not imply that Plaintiff may not maintain a claim for negligence due to failure to warn against a defendant who is not a manufacturer, distributor, seller, and lessor.[3]  *See Harrington v. Syufy Enterprises*, 931 P.2d 1378, 1380–81 (Nev. 1997) (discussing the duty to warn as a theory of negligence).

However, the Court need not resolve the legal issue of whether Plaintiff may be able to establish that Pool Chlor has a duty to warn under this facial attack.  Pentair argues that Pool Chlor was fraudulently joined based on the allegations in the complaint, but Pentair's removal is untimely.  A non-citizen defendant may only remove an action within 30 days of receipt of the initial pleading or service of summons.  28 U.S.C. § 1446(b).  Defendant was served with a

---

[3]   Pentair relies on *Forest v. Vitek, Inc.*, 884 F. Supp. 378 (D. Nev. 1993), for the proposition that negligence for failure to warn and strict liability for a product defect due to inadequate warning are identical legal claims. (Def.'s Opp'n (#20) 7:9–17).  *Forest*, however, is distinguishable from the case at bar.  In *Forest*, the court granted the manufacturer's motion for summary judgment on the plaintiff's claims for strict product liability due to inadequate warnings and negligence for failure to warn.  *Id.* at 379–80.  The court reasoned that the "bulk supplier defense" barred the plaintiff from recovery on both counts.  *Id.* at 381.  The court also reasoned that the manufacturer reasonably believed the intermediary was knowledgeable about the products dangers and would warn end-users.  *Id.*  Furthermore, the court noted that the product had no manufacturing defects and was safe for its normal use.  *Id.*  It may be true that the determination of whether a duty to warn exists is the same under the theories of strict product liability and of negligence.  However, this does not imply that just because strict product liability is limited to manufacturers, sellers, and distributors that negligence due to failure to warn is so limited.  In this case, unlike in *Forest*, the Court addresses a negligence for failure to warn claim against a party other than the manufacturer, seller, or distributor.  Any duty to warn that Pool Chlor had will not be based on its status as a manufacturer, seller, or distributor but on its relationship with Plaintiff.

summons and the complaint on July 27, 2009. (Aff. of Service). Pentair did not remove until April 8, 2010, well over 30 days after receipt of the complaint. Accordingly, a facial attack on the sufficiency of Plaintiff's complaint is insufficient to show that Pentair possessed the right to remove to this Court.

### B.     Factual attack

Pentair also attacks Plaintiff's jurisdictional allegations. Plaintiff alleges that Pool Chlor "provided inspection, service and maintenance" on Plaintiff's filter. (Compl. ¶ 13). Plaintiff also alleges that Pool Chlor's "conduct in the inspect[ion], service and maintenance" of the filter as willful and reckless. (*Id.* at ¶ 27). Plaintiff bases Pool Chlor's liability on its negligent failure to warn Plaintiff of defects and dangers in the filter. Pentair contends that, during discovery, facts came to light revealing that Pool Chlor did nothing more than provide chemical treatment of Plaintiff's pool. Thus, according to Pentair, Pool Chlor had no duty to warn Plaintiff and Plaintiff's fraudulently joined Pool Chlor in this action. Plaintiff argues that Pentair's notice of removal is procedurally defective and that, in any case, Pentair cannot meet its burden to show that Pool Chlor was fraudulently joined.

**1.     Pentair timely filed its notice of removal within 30 days of receiving Pool Chlor's responses to interrogatories that allowed Pentair to ascertain that Pool Chlor may have been fraudulently joined.**

Plaintiff argues that even if Pool Chlor was fraudulently joined, Pentair's removal is untimely.

> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

28 U.S.C. § 1446(b).

On September 8, 2009, Pool Chlor mailed its answer to Plaintiff.  In its answer, Pool Chlor denied that it provided inspection, service and maintenance on Plaintiff's filter because it was without sufficient information to form a belief as to the truth of the allegation.  (Pool Chlor's Ans. ¶¶ 13, 27).  Plaintiff argues that this allowed Pentair to ascertain that Pool Chlor had been fraudulently joined and thus Pentair had to remove within 30 days of Pool Chlor's answer.  But clearly, Pool Chlor's denial for lack of information as to whether it inspected, serviced, or maintained Plaintiff's filter would not put Pentair on notice that Pool Chlor was fraudulently joined.

On September 29, 2009, the parties participated in a case conference.  According to Plaintiff's attorney, Pool Chlor's counsel "stated repeatedly that her company [only oversaw the] chemical treatment of the pool." (Winner Decl. ¶ 2, attached as Ex. G to Pl.'s Mot. to Remand (#9)).  Plaintiff's counsel disagreed with this statement.  (*Id.*).  Plaintiff argues that this allowed Pentair to ascertain a basis for believing that Pool Chlor was fraudulently joined.  (Pl.'s Mot. to Remand (#9) 8:3–13).  Even if this oral conference provided notice to Pentair that Pool Chlor may be fraudulently joined, it is not a "pleading, motion, order or other paper" and thus does not trigger the 30-day period to remove.  *See* 28 U.S.C. § 1446(b); *see Smith v. Bally's Holiday*, 843 F. Supp. 1451, 1455 (N.D. Ga. 1994) (holding a general oral statement regarding damages was not a "pleading, motion, order or other paper"); *but see Riggs v. Continental Baking Co.*, 678 F. Supp. 236, 238 (C.D. Cal. 1988) (holding that a deposition is an "other paper").

On March 29, 2010, Pentair received Pool Chlor's responses to interrogatories and requests for production.  (Stephan Decl. ¶ 14, attached as Ex. B to Def.'s Pet. for Removal (#1)).  In response to Plaintiff's second interrogatory, Pool Chlor stated that "[a]ll services done for Plaintiff by Pool Chlor employees were limited to maintenance of the pool chemicals in Plaintiff's pool." (Pool Chlor's Resps. to Pl.'s 1st Set of Interrogs., attached as Ex. 1 to Stephan Decl.).  Pool Chlor reiterated that it only provided chemical services in its responses to Plaintiff's

eighth interrogatory. (*Id.*). In response to Plaintiff's third and twelfth interrogatories, Pool Chlor also stated that one of its employees had been told by Plaintiff that Plaintiff knew Pool Chlor had nothing to do with the filter or the suit and that "it was 'the lawyer pursuing it.'" (*Id.*). "Answers to interrogatories or questions put at depositions may thus constitute the 'other paper' necessary to give notice that a state court action has become removable." *Smith v. Int'l Harvester*, 621 F. Supp. 1005, 1008 (D. Nev. 1985). At this point, Pentair could ascertain that Pool Chlor had been fraudulently joined. Thus, Pentair could remove the action within 30 days from March 29, 2010. Because Pentair removed on April 8, 2010, Pentair's removal was timely.

  **2.**   **Plaintiff has not shown that Pentair failed to attach process, pleadings, or orders attached that it was served with before removal.**

  The notice of removal must contain "a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action." 28 U.S.C. § 1446(a).

  Plaintiff argues that Pentair's notice of removal is defective because it did not include an affidavit and a minute order from the state court proceedings. (Pl.'s Mot. to Remand (#9) 9:19–10:4). Plaintiff contends that Pentair was served, before removal, with an affidavit by Plaintiff's counsel in opposition to Pentair's motion for a protective order and a minute order reflecting the Discovery Commissioner's ruling. (*Id.*).

  The minute order is dated April 7, 2010, regarding proceedings held on April 7, 2010, at 10:30 a.m. (Minute Order, attached as Ex. H to Pl.'s Mot. to Remand (#9)). The minute order states that Plaintiff's opposition by affidavit and letter was not appropriate and states that the affidavit must be filed. (*Id.*). The affidavit lists a hearing date as April 7, 2010, and is dated April 6, 2010. (Workman Decl., attached as Ex. I to Pl.'s Mot. to Remand (#9)).

  Pentair argues that neither of these documents were "process, pleadings, [or] orders served upon" Pentair at the time of removal. (Def.'s Opp'n (#20) 15:4–7). Pentair also argues

that there is no indication when and if Pentair received service of either of these documents.  (*Id.* at 15:8–26).  Pentair contends that Plaintiff tried to oppose its motion for a protective order by a letter and affidavit sent to the Discovery Commissioner and Pentair's counsel on April 6, 2010.  At the hearing the next day, the Discovery Commissioner declined to consider the affidavit and letter because they were not filed with the court.  Plaintiff apparently filed the affidavit after the Discovery Commissioner's ruling.  (*Id.*).

Plaintiff counters that the Discovery Commissioner's minute order required the filing of Plaintiff's counsel's affidavit and that it was served on Pentair before the hearing.  (Pl.'s Reply (#22) 10:6–12).  However, Plaintiff provides no certificate, affidavit, or declaration stating that Pentair received service of the minute order and affidavit prior to removal on April 8, 2010.  Pentair, on the other hand, has attached a declaration by one of its attorneys swearing that Pentair attached copies of all filings it had in its possession to its notice of removal.  (Wong Decl. ¶ 4, attached to Def.'s Opp'n (#20)).  Based on the record before the Court, Plaintiff has failed to show that Pentair had received service of the minute order and affidavit before it filed its notice of removal.  Furthermore, the affidavit is not process, a pleading, or an order.  Therefore, the Court should not remand based on defects in the notice of removal.

### 3. Waiver

"[T]he right to remove is waived by acts which indicate an intent to proceed in state court."  *Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 447 (9th Cir. 1992) (reviewing the appropriateness of a district court's award of attorney's fees upon remand).  "Defendants may not 'experiment' in state court and remove upon receiving an adverse decision."  *Id.*  If a defendant waits to remove until after the district court has denied his motion to dismiss, he waives his right to remove.  *Id.* at 448.  In so holding, the Ninth Circuit noted that such a denial reflects the state court's position on the merits of the case and that the defendant's action in seeking a motion to dismiss indicated an intent to adjudicate in state court until the adverse

ruling. *Id.*

"It is well-settled that merely filing a responsive pleading does not invoke the state court's jurisdiction so as to constitute a waiver of the right to remove." *Acosta v. Direct Merchants Bank*, 207 F. Supp. 2d 1129, 1131 (S.D. Cal. 2002) (citing *Resolution Trust Corp. v. Bayside Developers*, 43 F.3d 1230, 1240 (9th Cir. 1994)). "In general, the 'right of removal is not lost by action in state court short of proceeding to an adjudication on the merits.'" *Acosta*, 207 F. Supp. 2d at 1131 (citing *Bayside*, 43 F.3d at 1240). But, a defendant may not effectively appeal a state-court ruling by removing to federal court. *Kiddie Rides USA, Inc. v. Elektro-Mobiltechnik GMBH*, 579 F. Supp. 1479, 1480 (C.D. Ill. 1984).

Plaintiff argues that, after Pentair became aware of its basis for removal on March 29, 2010, Pentair filed a motion for a protective order with the state court on March 30, 2010. Plaintiff contends that Pentair asked for an expedited hearing date to have the matter heard on April 7, 2010, one day before the one-year deadline for removal. (Pl.'s Mot. to Remand (#9) 8:25–9:4); *see* 28 U.S.C. § 1446(b). On April 7, 2010, the Discovery Commissioner recommended that Pentair's motion be granted in part and that Pentair be required to submit a detailed privilege log with documents for in-camera review. The Discovery Commissioner also recommended that Pentair turn over its insurance information by April 9, 2010 or face sanctions. (Minute Order, attached as Ex. H to Pl.'s Mot. to Remand (#9)). Pentair removed the case on April 8, 2010.

Pentair argues that it took only defensive action in the state court proceedings and did not waive its right to removal. (Def.'s Opp'n (#20) 13:7–14:3). Particularly, Pentair characterizes its motion for a protective order as a defensive act to protect its proprietary information from disclosure through discovery. (*Id.*).

Pentair did not waive its right to removal. It sought a protective order as a defensive act. The state court did not express a position on the merits of Plaintiff's case by requiring a detailed

1 privilege log from Pentair when it claims privilege. Pentair is not effectively seeking appeal.

2 Though the timing of the hearing and removal is suspicious, the Court should not infer waiver

3 from this timing alone. "A waiver of the removal right must be clear and unequivocal." *Acosta*,

4 207 F. Supp. 2d at 1131.

### 4. Pentair fails to demonstrate that Pool Chlor was fraudulently joined

6 The defendant always has the burden of establishing that removal is proper. *Gaus*, 980

7 F.2d at 566. "Fraudulent joinder must be proven by clear and convincing evidence." *Hamilton

8 Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007).

9 A defendant may show fraudulent joinder by establishing that plaintiff misrepresented a

10 jurisdictional fact on his complaint. If the defendant disputes the facts contained in the plaintiff's

11 pleadings, the Court may pierce the pleadings and consider summary judgment-type evidence.[4]

12 *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1068 (9th Cir. 2001) (citing *Cavallini v. State

13 Farm Mutual Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir. 1995)); *cf. Knutson*, 358 F. Supp. 2d at

14 995 (stating that courts may make factual determinations regarding claims of fraudulent joinder).

15 Thus, the Court may consider affidavits, depositions, and other evidence. *See West American

16 Corp. v. Vaughan Basset Furniture*, 765 F.2d 932, 936 n.6 (9th Cir. 1985). In some cases where

17 the defendant alleges misrepresentation of jurisdictional facts in the pleadings, the Court may

18 even hold an evidentiary hearing. *See Green v. Amerada Hess Corp.*, 707 F.2d 201, 204 n.2 (5th

---

[4] Pentair argues that the Court may not consider evidence beyond that which it included in its notice of removal. (Def.'s Opp'n (#20) 3:26–4:25). The cases Pentair relies on for this proposition do not support it. In *Wecker v. National Enameling & Stamping Co.*, the Supreme Court approved of the district court's consideration of affidavits filed by the parties to evaluate whether a defendant had been fraudulently joined and held that the district court was not required to decide the matter through an evidentiary hearing with the opportunity to cross-examine witnesses. 204 U.S. 176, 185–86 (1907). In *Lowery v. Alabama Power Co.*, the Eleventh Circuit did not address what evidence may be considered to determine fraudulent joinder. It only addressed the issue of what evidence a removing defendant may use to satisfy its burden of showing the minimum jurisdictional amount in controversy under the Class Action Fairness Act of 2005. The Eleventh Circuit analyzed what evidence the defendant could rely on to justify removal and limited it to the papers attached to its notice of removal. 483 F.3d 1184, 1211–18 (11th Cir. 2007). It did not hold that plaintiffs were so limited in contesting removal jurisdiction. The Eleventh Circuit noted that a defendant's petition for removal is similar to a plaintiff's complaint originally filed in federal court and that in both cases, the filing party must allege sufficient facts to establish federal jurisdiction. No extrinsic evidence may fill gaps in these pleadings. *Id.* at 1215–17.

1  Cir. 1983).  All ambiguities and contested issues of fact must be resolved in favor of the plaintiff.
2  *Travis v. Irby*, 326 F.3d 644, 649 (5th Cir. 2003).  The Court must only address the jurisdictional
3  issue; it may not adjudicate the merits of the case.  *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108,
4  112 (3d Cir. 1990).

5        The Court must now consider whether Pool Chlor was in fact fraudulently joined so that
6  it may disregard its citizenship for diversity jurisdiction.  Plaintiff provides several documents in
7  support of its contention that Pool Chlor maintained Plaintiff's pool filter.

8        Plaintiff provides his own declaration where he swears that he paid Pool Chlor for bi-
9  weekly cleaning and chemical service throughout 2008.  (Michaels Decl. ¶ 5, attached as Ex. A
10 to Pl.'s Mot. to Remand (#9)).  He swears that the cleaning duties included operating and
11 backwashing the filter.  (*Id.*).  He swears that Pool Chlor placed a service record in the electrical
12 box controlling power to the filter after each service and that he returned home several times
13 following Pool Chlor's service to find that Pool Chlor had activated the filter and left it running.
14 (Michaels Decl. ¶¶ 7–8).[5]

15       Pentair counters that the pool pump had a timer and could have been turned on
16 automatically and that Plaintiff never directly witnessed a Pool Chlor employee operate the filter
17 or pump.  (Def.'s Opp'n (#20) 8:27–9:15).  The existence of the timer is supported by a
18 deceleration and photograph.  (Stephan Decl. ¶ 3, Ex. 1, attached to Def.'s Opp'n (#20)).

19       Plaintiff provides a screen capture from a website entitled "Pool Chlor."  (Website,
20 attached as Ex. C to Pl.'s Mot. to Remand (#9)).[6]  The screen capture states that biweekly
21 cleaning service includes "cleaning and chemical service, including 'backwashing' sand and
22 D.E. filters."  (*Id.*).  Backwashing circulates water backwards through the filter.  If pressure is

---

[5] Plaintiff also swears that Jay Lohrengel, a Pool Chlor employee, told Plaintiff that Lohrengel's boss was so scared by the lawsuit that he could no longer operate or touch pool filters.  (Michaels Decl. ¶ 9, attached as Ex. A to Pl.'s Pl.'s Mot. to Remand (#9)).  This is double hearsay.

[6] Pool Chlor, http://www.thepoolchlor.com (follow "Services" hyperlink; then follow "Cleaning Service" hyperlink) (last visited June 23, 2010).

1  high through the filter after backwashing, the filter should be manually or chemically cleaned.

2  (Nautilus Filter Manual 6, attached as Ex. D to Pl.'s Mot. to Remand (#9)).

3        Pentair argues that Plaintiff has failed to show that this website has anything to do with

4  Pool Chlor. (Def.'s Opp'n (#20) 9:17–11:12). Pentair supplies a declaration by one of its

5  attorneys stating that a Lexis search found three corporations using the name "Pool Chlor"

6  incorporated in Nevada, Texas, and California. (Cogan Decl. ¶ 2, Exs. 3A, 3B, 3C, 3D, attached

7  to Def.'s Opp'n (#20)). The website Plaintiff references contains a picture of the state of Texas

8  and lists cities and counties in its "DALLAS POOLCHOR SERVICE AREA."[7] (Cogan Decl. ¶¶

9  3–4, Ex. 4, attached to Def.'s Opp'n (#20)). The website nowhere indicates that the company

10 behind it provides services in Nevada. Therefore, Pentair's foundation objection is well-taken.

11 Plaintiff has failed to show that this website has anything to do with Pool Chlor.

12       Plaintiff provides another screen capture from a different website entitled "Pool Chlor."

13 (Website, attached as Ex. F to Pl.'s Mot. to Remand (#9)).[8] The screen capture states that "Pool

14 Chlor" will be a resource to the customer on all aspects of pool ownership and maintenance and

15 provides technical bulletins on safety and filters. (*Id.*).

16       Again, Pentair argues that Plaintiff has failed to show that this website has anything to do

17 with Pool Chlor and not another "Pool Chlor" entity or some third party. (Def.'s Opp'n (#20)

18 9:17–11:12). However, this website indicates that the company behind it provides service in Las

19 Vegas, as well as Tucson, Phoenix, Dallas, Fresno, Bay, and Downy.[9]

20       Finally, Plaintiff swears in a declaration that he never told Jay Lohrengel that he knew

21 Pool Chlor had nothing to do with the filter or lawsuit or that it was Plaintiff's lawyer pursuing

22 it. (Michaels Decl. ¶ 9, attached as Ex. A to Pl.'s Pl.'s Mot. to Remand (#9)). In response to

---

[7] Pool Chlor, http://www.thepoolchlor.com (last visited June 23, 2010).
[8] Pool Chlor, http://www.poolchlor.com/about.aspx (last visited June 23, 2010).
[9] Pool Chlor, http://www.poolchlor.com (last visited June 23, 2010). Pentair also makes an argument regarding a third website, located at http://www.poolchlor.net, that Plaintiff did not reference. (Def.'s Opp'n (#20) 11:4–12). This argument does not appear relevant. Note, too, that all three of the "Pool Chlor" websites appear related in that they all use the same logo.

1  Plaintiff's third and twelfth interrogatories, Pool Chlor stated that one of its employees had been
2  told by Plaintiff that Plaintiff knew Pool Chlor had nothing to do with the filter or the suit and
3  that "it was 'the lawyer pursuing it.'"  (Pool Chlor's Resps. to Pl.'s 1st Set of Interrogs., attached
4  as Ex. 1 to Stephan Decl.).  Because there is no affidavit or declaration by the employee to this
5  effect, his statement must be treated as hearsay.

6      Examining the above evidence, it appears that Plaintiff's only support for his contention
7  that Pool Chlor had any involvement with his filter is that he sometimes returned home after Pool
8  Chlor had provided service to find his filter activated.  However, Plaintiff has no evidence
9  directly contradicting Pool Chlor's assertion that it provides only chemical services for pools.
10 Even if Pool Chlor employees sometimes turned on Plaintiff's filter system, it is unclear how this
11 would lead to a duty to warn Plaintiff of any danger resulting from the filter.  But, because
12 removal is disfavored, ambiguities and contested factual issues are resolved in favor of the
13 plaintiff, and the defendant bears the burden of showing fraudulent joinder by clear and
14 convincing evidence, the Court concludes that Pentair has failed to establish fraudulent joinder of
15 Pool Chlor.  The Court cannot conclude, without making findings of contested facts in Pentair's
16 favor, that Plaintiff fraudulently joined Pool Chlor.

17     **C.**    **Attorney's Fees**

18     "An order remanding the case may require payment of just costs and any actual expenses,
19 including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c).  "[A]bsent
20 unusual circumstances, attorney's fees should not be awarded when the removing party has an
21 objectively reasonable basis for removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136
22 (2005).  The Court may award attorney's fees in the absence of the defendant's bad faith.
23 *Balcorta v. Twentieth Century-Fox Film Corp.*, 208 F.3d 1102, 1106 n.6 (9th Cir. 2000).

24     Plaintiff asks the Court to award him costs and attorney's fees if it remands the case back
25 to state court. (Pl.'s Mot. to Remand (#9) 10:6–17).  Though the Court must remand this case

due to Pentair's failure to meet its heavy burden of showing fraudulent joinder, the Court cannot conclude that Pentair lacked an objectively reasonable basis for removal.  Pentair reasonably believed that Pool Chlor had nothing to do with the filter explosion that caused Plaintiff harm because Pool Chlor responded to interrogatories stating that it only provided chemical services for Plaintiff's pool.  Moreover, Pentair reasonably believed that on removal and motion to remand, Plaintiff would lack evidence to support his allegation that Pool Chlor was more involved with the maintenance of the filter.  Though it turned out that Plaintiff could provide some evidence to support this position, Pentair did not know that at the time.  Therefore, the Court does not award Plaintiff attorney's fees or costs.

## V.  CONCLUSION

The Court has considered the pleadings and arguments offered by all parties.

IT IS HEREBY ORDERED THAT Plaintiff's Motion to Remand (#9) is GRANTED.

DATED this 9th day of August, 2010.

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE